Argued and submitted January 24, affirmed March 1, petitions for review denied June 1, 2017 (361 Or 524)

In the Matter of C. Z.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. F.,
aka A. H., and E. Z.,
*Appellants.*

Deschutes County Circuit Court
ZIECHR13;
Petition Number 13JV0274;
A162622

391 P3d 991

Shannon L. Flowers, Deputy Public Defender, argued the cause for appellant A. F. With her on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Aron Perez-Selsky filed the brief for appellant E. Z.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen

F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Sercombe, Presiding Judge, and Flynn, Judge, and DeHoog, Judge.

**FLYNN, J.**

Parents appeal from the denial of their motion to dismiss jurisdiction as to their child, C, who was two and one-half years old at the time of the hearing. Neither parent requests *de novo* review, and this is not a case where such review is appropriate. *See Dept. of Human Services v. J. M.*, 275 Or App 429, 431, 364 P3d 705 (2015), *rev den*, 358 Or 833 (2016) (explaining that "[w]e exercise our discretion to review *de novo* sparingly and only in exceptional cases"). Accordingly, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit a particular outcome." *Id.* (internal quotation marks omitted). Applying that standard of review, we affirm.

The procedural facts are undisputed. The Department of Human Services (DHS) removed C from father's care when he was nine days old. At that time, C lived with father, and mother lived separately. The juvenile court took jurisdiction based on DHS's allegations that both mother and father have "limited cognitive abilities that interfere with [their] ability to safely parent the child." There is no dispute that mother's IQ places her in the "[e]xtremely low to borderline" range of intelligence and that father's IQ places him in the range of "mild mental retardation." However, by the time that parents moved to dismiss jurisdiction, they were living together and had completed a parenting program that involved more than a year of weekly supervised visits paired with a parenting curriculum. The parenting coach for that program reported that parents had made progress and recommended that DHS move toward more frequent visits and some unsupervised visits. Based in part on their progress in the parenting program, parents argued that their cognitive limitations no longer constitute bases for jurisdiction. The juvenile court determined that DHS proved otherwise and denied parents' motion to dismiss. On appeal, parents renew their argument that the record is insufficient to support continuing jurisdiction.

To prevail against parents' motion to dismiss jurisdiction, DHS was required to prove by a preponderance of

the evidence that, at the time of the hearing: (1) the facts upon which jurisdiction was based continue, (2) those facts continue to expose the child to a risk of serious loss or injury, and (3) the risk will likely be realized should the court terminate the wardship and dismiss jurisdiction. *Dept. of Human Services v. T. L.*, 279 Or App 673, 678, 379 P3d 741 (2016). Viewing the record in the light most favorable to the trial court's disposition, we conclude that DHS met its burden.

There is evidence that parents' cognitive limitations persist. There is also some evidence that situations will arise for C, as a toddler, that present a risk of serious injury and that parents' cognitive limitations interfere with their judgment and ability to recognize the danger of those situations. Moreover, that evidence is not merely speculative. Parenting services providers who have worked with the family described specific examples of past situations in which parents failed to recognize circumstances that exposed C to a serious risk of injury and then resisted advice about how to eliminate the risk. The providers also identified specific common situations that are likely to occur for C and that present a risk of serious injury to him. Finally, there is some evidence from which the juvenile court could infer that parents will not seek parenting assistance from parenting specialists, family, or friends, unless required to do so by DHS, and that, without such assistance, parents' cognitive limitations continue to expose C to a risk of serious loss or injury.

We emphasize that this is a record-dependent decision and should not be understood to suggest that cognitively impaired parents are necessarily unable to parent. This record, however, viewed in the light most favorable to the juvenile court's jurisdictional disposition, permits the decision to continue jurisdiction. *Cf. Dept. of Human Services v. S. P.*, 249 Or App 76, 92, 275 P3d 979 (2012) (reversing jurisdictional judgment based on allegation that mother's "developmental delays" interfere with her ability to safely parent infant, because the record was "devoid of evidence, expert or otherwise" regarding mother's mental capacity or how her disability "might affect her ability to care for a newborn," and because the record demonstrated

that mother had the assistance of the father—who was capable of safely parenting—and that she was "very able to access services and tell people when she needs support" (internal quotation marks omitted)).

Affirmed.